1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BALJINDER RAI, et al., | ) | Case No. 5:12-cv-004344-PSG |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING MOTION FOR** |
| | ) | **CLASS CERTIFICATION** |
| v. | ) | |
| | ) | **(Re: Docket No. 143)** |
| SANTA CLARA VALLEY | ) | |
| TRANSPORTATION AUTHORITY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Each weekday, 139,582 people ride the Santa Clara Valley Transportation Authority's bus

and light rail train system.[1]  Richard Rosa and Walter Silveira are system operators who allege that

from August 17, 2009 onward VTA subjected them to a common and unlawful compensation

scheme.[2]  Plaintiffs say that VTA required them to "work off-the-clock without compensation"

because VTA did not compensate them for "all hours worked" performing compensable work

---

[1] *See* Santa Clara Valley Transportation Authority System Summary,
http://www.vta.org/transparency/performance-indicators/system-summary (139,582 average
weekday boarding riders for the financial year to date 2015 first quarter).

[2] By stipulation of the parties, Silveira substituted for former Plaintiff Baljinder Rai. *See* Docket
No. 142.

**United States District Court**
For the Northern District of California

activities such as traveling to their routes and meeting with their supervisors.[3]  Plaintiffs move for certification of a class of operators under-compensated during the relevant time period.[4]

Whatever their ultimate success on the merits, the substantial record compiled by the parties shows that Plaintiffs meet the requirements for class certification.[5]  The court GRANTS Plaintiffs' motion.

---

[3] *See* Docket No. 36 at 12-13.

[4] *See* Docket No. 143.  Plaintiffs seek class certification for the Second and Third Causes of Action of their Fourth Amended Complaint, which allege failure to pay all hours worked. *See id.* at 12-13; *see also* Docket No. 143 at 1.  Plaintiffs also make other claims not at issue here.

[5] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  If the fact is not in dispute and may be verified by resort to the public record, the court takes judicial notice as requested.  A court may take judicial notice of laws, city ordinances and opinion letters. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Mendoza v. Home Depot, U.S.A., Inc.*, Case No. 09-05843-SJO(JCx), 2010 WL 424679, at *3 (C.D. Cal. Jan. 21, 2010) (Industrial Wage Orders and California Division of Labor Standards Enforcement Opinion Letters "are properly subject to judicial notice"). Plaintiffs request that the court take judicial notice of (1) the California Industrial Welfare Commission Wage Order 9-2001, codified at 8 Cal. Code Regs. § 11090 (Docket No. 144, Ex. 1); (2) the City of San Jose Minimum Wage Ordinance (Docket No. 144, Ex. 2) and (3) a California Division of Labor Standards Enforcement Opinion Letter of January 29, 2002 (Docket No. 144, Ex. 3). Because none is subject to a reasonable dispute, the court takes notice as requested.

Plaintiffs also object to the tardiness of VTA's opposition brief, *see* Docket No. 167 at 2,  and further complain that the declarations of Anita Geleynse, Eric Rosenberg and David Terrazas are not signed and lack an attestation by the filer as Civ. L.R. 5-1(i)(3) requires. *See id*; *see also* Docket Nos. 154-1, 154-2, 155.  Plaintiffs assert that these declarations—along with the declaration of Joseph P. Ryan—are defective because they purport to be "under penalty of perjury under the laws of the State of California," not under federal law. *See* Docket No. 167 at 2 (citing *Mejia v. City of San Bernardino*, Case No. EDCV-11-00452-VAP(DTBx), 2012 WL 1079341, at *2 (C.D. Cal. Mar. 30, 2012)); *see also* Docket No. 154-3.  The court does not condone late filings or filings of defective, unsigned declarations.  But as explained below, class certification is proper, even considering these declarations and VTA's opposition brief.

For its part, VTA objects that Plaintiffs "filed a voluminous motion just before Thanksgiving" without giving VTA time to discuss a discovery plan with Plaintiffs. *See* Docket No. 154 at 4. Plaintiffs filed their motion in compliance with the stipulated, court-ordered schedule and gave VTA an extension of time to file its opposition. *See* Docket Nos. 132, 143, 153.  This was sufficient.

2

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

# I.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[6]  To satisfy class certification requirements, class members' claims must be capable of satisfaction in "one stroke."[7]  To satisfy the four threshold requirements of Fed. R. Civ. P. 23(a), (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy).[8]  Plaintiffs seeking class certification must also satisfy the requirements of Rule 23(b), subdivisions 1, 2 or 3, which define three different types of classes.[9]

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), the predominance standard.[10]  To certify a class under Rule 23(b)(3), the party seeking class certification must establish that both that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and that (2) a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."[11]  "The shared legal or factual issues must be of sufficient importance to the case that the Court is convinced that the most

---

[6] *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-1 (1979)).

[7] *Id.* at 2551.

[8] *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4)); *see also Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

[9] *See* Fed. R. Civ. P. 23(a)-(b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Leyva*, 716 F.3d at 512.

[10] *See* Docket No. 143 at 18.

[11] Fed. R. Civ. P. 23(b)(3).

3

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1  efficient, fair, and sensible method of adjudication is through a class action."[12]  As a result, the

2  predominance inquiry examines "whether proposed classes are sufficiently cohesive to warrant

3  adjudication by representation."[13]

4      In evaluating whether a party has met the requirements of Rule 23, "Rule 23 does not set

5  forth a mere pleading standard."[14]  "A party seeking class certification must affirmatively

6  demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in*

7  *fact* sufficiently numerous parties, common questions of law or fact, etc."[15]  This is a "rigorous

8  analysis"[16] that must "'entail some overlap with the merits of the plaintiff's underlying claim.'"[17]

9      Over three hundred and eighty bus and train operators perform public transit services for

10  VTA each day.[18]  Each of these operators is assigned to one of four divisions.[19]  VTA oversees and

11  operates all divisions.[20]  Since 2008, VTA and Amalgamated Transit Union, Local 265, which

12  represents all bus and train operators at VTA, have been parties to collective bargaining

13  agreements that set forth operators' wages, hours of work and working conditions.[21]

---

[12] *Stitt v. San Francisco Mun. Transp. Agency*, Case No. 12-cv-3704, 2014 WL 1760623 (N.D. Cal. May 2, 2014) (citing Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:274).

[13] *Hanlon*, 150 F.3d at 1022 (internal citations omitted).

[14] *Wal-Mart*, 131 S. Ct. at 2551.

[15] *Id.* (emphasis in original).

[16] *See id.*; *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013).

[17] *See Wal-Mart*, 131 S.Ct. at 2551; *In re Google Inc. Gmail Litig.*, Case No. 5:13-md-02430-LHK, 2014 WL 1102660, at *11 (N.D. Cal. Mar.18, 2014); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").

[18] *See* Docket No. 145-2, Tidrick Decl., Ex. G, Cuff Depo. at 26:8-27:10.

[19] *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 10:13-12:1.

[20] *See id.* at 10:20-11:3, 12:9-13, 18:20-25.

[21] *See* Docket No. 155, Terrazas Decl. at ¶¶ 3-11, *see also* Docket Nos. 155-162, Terrazas Decl., Ex. 1-2.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

Throughout the proposed class period, VTA has used Trapeze, a computer software suite, to design schedules for its bus and light rail operators.[22]  VTA uses Trapeze to create a "Synopsis of Runs" that identifies each operator's daily assignment.[23]  The Synopsis of Runs enables VTA to calculate a predetermined daily pay amount for each operator.  To determine this amount, VTA calculates the operator's total "straight time," which is a predetermined amount of compensable time for various categories of time associated with the operator's run.[24]  In some situations, straight time includes additional time that operators are paid in order to meet full time operators' guarantee of eight hours of daily pay and "elapsed time," which is a premium for work time that exceeds ten hours and thirty minutes.[25]  VTA adds straight time hours to overtime hours and then multiplies this figure by the applicable hourly rates to calculate the operator's total daily pay.[26]

Plaintiffs allege that VTA's compensation system does not pay operators for "all (1) split-shift travel time, (2) turn-in time, (3) bulletin time, (4) meeting time, (5) pre-departure time and (6) all time actually spent driving."[27]  In the Second and Third Causes of their Fourth Amended Complaint, Plaintiffs allege that by not "compensat[ing] operators for all hours worked," VTA has

[22] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 9:7-10:25, 28:3-14, 29:5-19; *see also* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 18:6-25.

[23] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 31:7-32:4; Docket Nos. 145-2, 145-3, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 1.

[24] *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 79:23-80:24; Docket No. 145-7, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 5 at Section 11, pages 5 ("Synopsis of Runs: Explanation of each Column as Follows" defining the column labeled "STRT TIME" as "Straight Time. A combination of total platform, travel time, allowed time, report time and elapsed time"); *see also* Docket Nos. 145-2, 145-3, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 1.

[25] *See* Docket No. 145-7, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 5 at Section 11, pages 5.

[26] *See id.* ("Synopsis of Runs: Explanation of each Column as Follows" defining "TOTAL PAY" as "[t]he number of hours being paid at straight time rate for STRAIGHT TIME and OVER TIME (Total Run Pay). Multiply this time by the hourly rate to figure total pay for the day"); *see also* Docket Nos. 145-2, 145-3, Stanislaw Depo. Vol. 1, Ex. 1.

[27] Docket No. 143 at 5.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

violated California Industrial Wage Order No. 9, California Labor Code § 1194 and San Jose Municipal Code Chapter 4.100.[28]

Plaintiffs now request that the court certify a class with request to these causes of action of "[a]ll individuals who are currently employed, or formerly have been employed, by the Santa Clara Valley Transportation Authority as a bus or train operator at any time on or after August 17, 2009."[29] Plaintiffs also seek authorization to send to all class members the class notice attached to the Declaration of Steven G. Tidrick, appointment of Plaintiffs Richard Rosa and Walter Silveira as representatives of the class and appointment of the Tidrick Law Firm as class counsel.[30]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

At issue is whether Plaintiffs' proposed class should be certified.  Because Plaintiffs have met the requirements of both Rule 23(a) and Rule 23(b)(3), the court certifies the proposed class.

***First***, Plaintiffs have standing to pursue their claims.  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."[31]  Put

---

[28] *See* Docket No. 36 at 12-13.

[29] Docket No. 143 at 1.  Plaintiffs also request that the class exclude "anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this action is assigned and his or her immediate family members." *See id.* at 1.

[30] *See id.*

[31] *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

6

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1  another way, if "the individual plaintiff lacks standing, the court need never reach the class action

2  issue."[32]

3       VTA suggests that Plaintiffs lack standing to seek compensation for time allegedly worked

4  in excess of eight hours because they are guaranteed eight hours per day under their collective

5  bargaining agreements.[33]  While Section 510 of the California Labor Code and Wage Order No. 9

6  provide that employers must pay overtime to employees who work in excess of certain time

7  periods,[34]  neither Section 510 nor Wage Order No. 9 applies to employees like Plaintiffs covered

8  by a "valid collective bargaining agreement" that expressly provides for "premium wage rates for

9  all overtime hours worked" and a "regular hourly rate of pay…of not less than 30 percent more

10  than the state minimum wage."[35]  But, as Plaintiffs point out, no state court has ruled that the time

11  the operators receive under a guarantee of eight hours of paid work per shift may "offset any time

12  spent performing tasks that are not built into the schedules."[36]

13       VTA's assertion that Plaintiffs' failure to use the procedures provided in the CBAs to

14  grieve their claims is "a jurisdictional bar to pursuing those claims" in this court similarly lacks

15  merit.[37]  As with VTA's claim that Plaintiffs' overtime claims are barred, no court has ruled that a

16

17  [32] *See id.* (internal citations omitted); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985
    (9th Cir. 2007) (en banc) ("In a class action, standing is satisfied if at least one named plaintiff
18  meets the requirements.")

19  [33] *See* Docket No. 154 at 7-8.

20  [34] *See* Cal. Labor Code § 510(a); 8 C.C.R. § 11090(3).

21  [35] *See* Cal. Lab. Code §§ 510(a)(2), 514; 8 C.C.R. § 11090(3)(H); *see also* Docket No. 154 at 8; *see*
22  *also* Docket No. 155, Terrazas Decl. at ¶¶ 8, 10.

23  [36] *See* Docket No. 167 at 7; *cf.* Docket No. 144, Ex. 3 at 11 ("Averaging of all wages paid under a
    CBA or other contract, within a particular pay period, in order to determine whether the employer
24  complied with its minimum wage obligations is not permitted under these circumstances, for to do
    so would result in the employer paying the employees less than the contract rate for those activities
25  which the CBA or contract requires payment of a specified amount equal to or greater than the
26  minimum wage, in violation of Labor Code sections 221-223.").

27  [37] *See* Docket No. 154 at 9-10. VTA asserts that a party to a collective bargain agreement which
    "provides grievance and arbitration machinery for the settlement of disputes" within the scope of
28

7

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

lack of exhaustion bars Plaintiffs' claims, especially where, as here, Plaintiffs assert that they "can prove that their claims are not subject to mandatory arbitration."[38] VTA's challenges to Plaintiffs' claims thus do not rise to the level necessary to "establish" that Plaintiffs have no viable claims.[39]

**Second**, Plaintiffs meet the numerosity requirement.  Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  The Rule creates greater access to judicial relief, particularly for those persons with claims that would be "uneconomical to litigate individually."[40]  A class of forty or more members "raises a presumption of impracticability of joinder based on numbers alone."[41]

Plaintiffs have shown, and VTA concedes, that Plaintiffs meet the numerosity requirement.[42]  Plaintiffs have presented evidence that VTA employed at least 1,083 people as operators during the proposed class period.[43]  Given the number of class members, joinder would be impracticable.[44]

---

such agreement "must exhaust the internal remedies" before seeking redress in court "in the absence of facts excusing such exhaustion." *See* Docket No. 154 at 9 (citing *Johnson v. Hydraulic Research & Mfg. Co.*, 70 Cal. App. 3d 675, 679 (1977)); *see also* Docket No. 155, Terrazas Decl., Ex. 1, Part A, Section 19 (providing a grievance procedure for disputes regarding the CBA); Docket No. 159, Terrazas Decl., Ex. 2, Part A, Section 19 (same).

[38] *See* Docket No. 167 at 8; *cf. Lierboe*, 350 F.3d at 1023 (noting that state supreme court had "established" that plaintiff's claim was not viable under state law).

[39] *See id.*

[40] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1762 (3d ed. 2005).

[41] 1 William B. Rubenstein, Newberg on Class Actions § 3:12, (5th ed. 2011); *see also Rannis v. Recchia*, 380 Fed. Appx 646, 651 (9th Cir. 2010).

[42] *See* Docket No. 154 at 4 ("VTA does not question the 'numerosity' criterion.").

[43] *See* Docket No. 145, Tidrick Decl. at ¶ 3 ("VTA produced to Plaintiffs' counsel contact information for a total of 1,083 Operators…taking into account additional individuals that VTA has hired as Operators since that time, the proposed class size is at least 1,083 people.").

[44] Under the ascertainability doctrine, the class must be sufficiently definite so that it is feasible for the court to determine membership by reference to objective criteria. *See Williams v. Oberon*

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

**Third**, Plaintiffs have met the commonality requirement.  Commonality is met when there are "questions of law or fact common to the class."[45] "Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," and not merely violations of "the same provision of law."[46]  The class members' claims must "depend upon a common contention" such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[47]  "Put another way, the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'"[48]

Dissimilarities between class members must be considered in determining whether a common question will generate a common answer because dissimilarities within the proposed class can "impede the generation of common answers."[49]  Thus, commonality must be determined based on an understanding of the nature and merit of the underlying claims to the extent such analysis is "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[50]

---

*Media, Inc.*, 468 Fed. Appx. 768, 770 (9th Cir. 2012) (class motion was properly denied because the proposed members are not "precise, objective or presently ascertainable").  VTA does not dispute that this requirement is met, and Plaintiffs have presented sufficient evidence that VTA maintains records from which the class members can be identified. *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 21:2-24; Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 70:18-23; Docket No. 150, Drogin Decl. at ¶¶ 4, 17-18; Docket No. 145, Tidrick Decl. at ¶ 3.

[45] Fed. R. Civ. P. 23(a)(2).

[46] *Wal-Mart*, 131 S.Ct. at 2551 (internal citations omitted).

[47] *Id.*; *see also Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

[48] *Abdullah v. U.S. Sec. Ass'n, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S.Ct. at 2551 (emphasis in original)).

[49] *Wal-Mart*, 131 S.Ct. at 2551 (internal citations omitted).

[50] *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013) (internal citations omitted); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] district court *must* consider the merits [of plaintiffs' claims] if they overlap with the Rule 23(a) requirements.") (emphasis in original).

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1
2
3
4
5

Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class-wide resolution.  So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."[51]  Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."[52]

6
7
8
9
10
11
12
13
14

In *Wal-Mart*, the Supreme Court held the plaintiffs had not established commonality when plaintiffs had not alleged an "express corporate policy" of discrimination and the challenged employment decisions were "generally committed to local managers' broad discretion."[53]  The Supreme Court noted that there is a "conceptual gap" between an individual's claim of injury and "the existence of a class of persons who have suffered the same injury."[54]  The plaintiffs could have bridged this gap by offering "significant proof that [their] employer operated under a general policy of discrimination."[55]  However, because the plaintiffs provided "no convincing proof of a companywide" policy of discrimination, the Supreme Court concluded that they had "not established the existence of any common question."[56]

15
16
17

Plaintiffs allege that VTA maintains common policies, procedures and practices relating to the compensation of all operators with respect to each of the six categories of time for which they seek compensation.  The court considers each in turn.

18
19
20

---

21

[51] *Wang*, 737 F.3d at 544 (quoting *Wal-Mart,* 131 S.Ct. at 2556).

22

[52] *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir.2012) (internal citations omitted).

23

[53] *Wal-Mart*, 131 S.Ct. at 2547-48.

24

[54] *Id.* at 2553 (internal citations omitted).

25

[55] *Id.* at 2553 (internal citations omitted).

26

27

[56] *Id.* at 2556-57.

28

10

United States District Court
For the Northern District of California

1   To begin, Plaintiffs have presented substantial evidence that VTA maintains a policy not to

2   pay operators for "split-shift travel time."[57]   VTA requires operators to sometimes work "split

3   runs" which consist two parts which are separated by some amount of time.[58]   The first part of

4   these "split runs" ends at a location that is geographically distant from the beginning of the other

5   part of the split run.[59]   As a result, an operator incurs split-shift travel time when he or she travels

6   from the end of the first part of the split run to the beginning of the second split run.[60]   Even though

7   VTA's route and scheduling decisions cause operators to engage in this travel,[61]   VTA pays

8   operators for the travel time based on "scheduled running time of the service available at that time

9   of day," a computation that, except for light rail operators, as a "general rule" does not include

10   "time for waiting or walking."[62]

11   Plaintiffs also have presented substantial evidence that VTA has policies not to compensate

12   operators for "pre-departure time" and "turn-in time."[63]   Operators incur pre-departure time

---

[57] *See* Docket No. 143 at 5-6.

[58] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 58:1-59:9, 67:17-68:17; *see also* Docket No. 145-1, Tidrick Decl., Ex. B,  Rosa Decl. at ¶¶ 9-12 (describing split-shift travel time); *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls. (declarations of other operators describing split-shift travel time).

[59] Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 9; *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls.

[60] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 58:2-23; Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 9; *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls.

[61] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 59:3-60:6, 67:17-68:17; Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 10 ("This 'split-shift travel' is the result of Defendant's route and scheduling decisions and is for the convenience and benefit of Defendant only."); Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls. (similar assertions).

[62] *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 55:5-56:9 (payment for "travel time" as a "general rule" does not include time spent "walking or waiting" except that light rail is "paid for the waiting time").

[63] *See* Docket No. 143 at 6-9.

11

United States District Court
For the Northern District of California

1  because VTA has developed policies that result in operators sometimes arriving early to locations

2  at which they relieve other operators from their routes.[64]  Operators incur turn-in time because

3  VTA requires operators to incur turn-in time performing various tasks after they pull into the

4  divisions at which some shifts end.[65]

5      VTA employee Eric Rosenberg asserts that turn-in time is "obsolete" and that the time that

6  operators spend pulling into the division, parking the buses and walking into the division to turn in

7  their pouches is "built into the run pay" and was "measured at each Division."[66]  However,

---

[64] Operators sometimes relieve other operators at locations on routes that are geographically distant from their current locations. *See* Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 28 ("I have had to travel from either a relief point or my division to relieve another Operator."); *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls.  VTA recommends that operators take the bus or train to the relief location that is two buses or trains ahead of the bus or train that would get the operator to the relief point at the exact time of or just before the relief that the operator is making. *See* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 77:2-78:2; Docket No. 145-2, Tidrick Decl., Ex. C, Marshall Decl. at ¶¶ 6-8.  Operators are "subject to discipline" if they do not arrive at the relief point within a certain timeframe, but "excused from such discipline" if they followed VTA's recommendation regarding which bus or train to take to the relief location. *See* Docket No. 145-2, Tidrick Decl., Ex. E, Stanislaw Depo. Vol. 2 at 100:1-102:7.  VTA acknowledges that following its recommendation would "typically" result in operators arriving at relief locations early. *See* Docket No. 145-2, Tidrick Decl., Ex. E, Stanislaw Depo. Vol. 2 at 102:8-12; *see also* Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 77:21-78:2; Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 29 (describing how VTA's instructions "routinely" result in early arrival to operator's relief location); *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls. (describing similar early arrivals).

[65] Some operators' shifts end at relief points and others end at divisions. *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 32:16-20.  VTA maintains policies and procedures that require operators to perform various tasks after pulling into divisions. *See id.* at 26:10-28:17, 32:21-33:8; Docket No. 145-8, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 6, Rule 4.25 ("Responsibilities After Pull-In"), Docket No. 146, Ex. 7, Rule 4.25 ("Responsibilities After Pull-In"), Docket No. 146-2, Ex. 8, Rule 12.12.13 ("Place the defect card on the clipboard attached to the shop office door."); Docket No. 145-2, Tidrick Decl., Ex. E, Stanislaw Depo. Vol. 2 at 102:17-103:7; Docket No. 146-7, Stanislaw Depo. Vol. 2, Ex. 26, Rule 4.25 ("Responsibilities After Pull-In"); Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 13 (describing how VTA requires operator to "turn in various documents (for example, defect cards, run paddles, operator comment forms, lost property tags, and suspect description forms) to the dispatcher at the division at the end of my day's assignment and/or at the end of a route that requires me to return my vehicle back to the division"); *see also* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls. (describing time spent on similar turn-in activities).

[66] *See* Docket No. 154-2, Rosenberg Decl. at ¶¶ 8-9.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

Plaintiffs have presented evidence that VTA does not include both pre-departure time and turn-in time in its "Synopsis of Runs" which it uses to calculate its predetermined payment amounts for operators.[67]  Multiple operators also state that VTA has not paid them for all turn-in time.[68]  Accordingly, while the evidence Rosenberg presents suggests that operators sometimes are paid for turn-in time, it is not sufficient to rebut Plaintiffs' substantial evidence that VTA has policies and practices that result in operators not being compensated for all pre-departure and turn-in time.

Similarly, Plaintiffs have presented substantial evidence that VTA has common policies and practices not to compensate operators for bulletin time and meeting time.  VTA requires operators to spend "bulletin time" checking bulletin boards at their divisions for bulletins and notifications, reviewing any items posted and meeting with superiors if the operator needs clarification or instructions regarding the posted materials.[69]  VTA also requires operators to spend "meeting time" with their supervisors to talk about "items related to [operators'] job duties and other business" of

---

[67] *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 79:23-80:24, Docket No. 145-7, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 5 at Section 11, pages 4-5 (showing that "straight time" consists of "a combination of total platform, travel time, allowed time, report time and elapsed time" and stating that "Turn In Time" is "[n]ot used at this time"), Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1, Ex 1 (indicating no time allocation in "Turn Time" column); Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 55:5-56:9 (payment for "travel time" as a "general rule" does not include time spent walking or waiting except that light rail operators are paid for waiting time).

[68] Docket No. 145-1 Tidrick Decl., Ex. B, Silveira Decl. at ¶¶ 17, 21 (stating that VTA has not compensated operator for all pre-departure and turn-in time); Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B,  Operators' Decls.  Plaintiffs also present evidence that operators are not paid for turn-in time because they are "off-the-clock" when they arrive at the gate of the division. *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 25:9-12 ("[P]ull-in" is the "time when the operator is scheduled to pull into the division gate"); Docket No. 145-3, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex. 2 ("Pull In 11:27p" for "Run[] 2128" indicating that the time the vehicle pulls into division is 11:27 pm); Docket No. 145-2, Tidrick Decl., Stanislaw Depo. Vol. 1, Ex.1 at 3 ("Time Off 11:27p" indicating that scheduled ending time of run 2128 is 11:27 pm).

[69] *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Vol. 1 at 68:8-22-69:5, Docket No. 145-7, Ex. 6 at pg III-IV, Docket No. 146  Ex. 7, at pg III-IV, Docket No. 146-1, Ex. 8, Rule 1.3; *see also* Docket No. 146-7, Tidrick Decl., Ex. E, Stanislaw Depo. Vol. 2, Ex. 26, 2014 Coach Operator Rulebook at pg. III-IV.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1     VTA.[70]  Despite these requirements, Plaintiffs have presented evidence that VTA does not pay

2     operators for all time spent on bulletin time and all time spent in meetings regarding payroll

3     correction forms.[71]

4          With respect to Plaintiffs' claims for additional driving time, Plaintiffs also have provided

5     substantial evidence showing that VTA has a common policy of compensating operators for

6     driving time based on a predetermined schedule rather than the actual time the operators spend

7     driving.[72]  Operators incur "routinely late time" not included in this schedule because they arrive at

8     the end points of their runs after the scheduled arrival times.[73]

9

10    [70] *See* Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶¶ 34-39; *see also* Docket Nos. 145-1,

11    145-2, Tidrick Decl. Ex. B, Operators' Decls. (describing time spent on similar meeting-related
      activities).

12
      [71] Plaintiffs cite to evidence showing that VTA "has maintained a policy and practice of not
13    including Bulletin Time in the Synopsis of Runs that it creates using Trapeze, and not paying for
      that time." *See* Docket No. 143 at 9 (citing Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw
14    Depo. Vol. 1 at 79:23-80:24; Docket No. 145-7, Ex. 5 at Section 11, page 5 (showing that straight
      time consists of "total platform, travel time, allowed time, report time and elapsed time")).  VTA
15    also has a policy not to compensate operators for time meeting regarding payroll correction forms.
      *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. Vol. 1 at 60:1-3 (agreeing that
16    operators are not "paid for the time meeting with the timekeeper about…paycheck investigation
      request[s]").
17

18    [72] *See* Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 21:10-12 ("Your schedule is what
19    you're paid for."); Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 23 ("The amount I
      receive in compensation per day is set by the same schedule for the particular run assignment. If
20    my vehicle arrives at the ending point after the scheduled arrival time, then I am not compensated
      for such time."); *see also* Docket Nos. 145-1, 142, Tidrick Decl., Ex. B, Operators' Decls.
21

22    [73] Operators claim that runs are "routinely" late. *See* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex.
      B, Operators' Decls.  VTA is aware that operators sometimes arrive at the end points of their runs
23    late. *See* Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 17:3-20 (noting that operators
      complain that "there is not enough time" in the schedule and they are "rushing to get from point A
24    to point B"), 18:20-19:1 (noting that operators submitted "overtime cards for coming in late"),
      19:11-20:10 ("I know that occasionally [buses] do come back to the division late.").  Plaintiffs
25    have presented evidence that VTA maintains policies and practices that contribute to this lateness.
      For instance, VTA's "general rule…that [operators are] not supposed to leave [time points] early"
26    prohibits operators from driving ahead of schedule. *See* Docket No. 145-2, Tidrick Decl., Ex. F,
27    Rosenberg Depo. at 32:5-24, 40:11-41:18.

28

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

VTA broadly asserts that "[t]he alleged common policies on which Plaintiffs rely do not actually exist."[74]  However, given the substantial evidence Plaintiffs have presented, VTA's attempt to negate the existence of these policies is unpersuasive.  Accordingly, Plaintiffs have presented "significant proof" that VTA has established and maintained "uniform policies and practices relating to compensation of class members that admitted of no appreciable discretion and that allegedly resulted in systematic, illegal under-compensation."[75]  With respect to these policies and practices, Plaintiffs have raised the common questions of whether the categories of time for which Plaintiffs seek payment are compensable work time and whether VTA's compensation scheme violates the SJMWO, Wage Order No. 9 or California Labor Code § 1194 by failing to separately allocate pay for time spent on various non-driving work tasks.[76] With respect to routinely late time, Plaintiffs also present the common question of whether VTA has "actual and constructive knowledge of the regularity and extent of [uncompensated work time] such that its failure to compensate [o]perators for such time is knowing and willful."[77]  Resolution of these questions will resolve "in one stroke" whether the class members have a legal right to be compensated for these categories of time.[78]  Plaintiffs thus present common questions that "will connect" the compensation scheme to "their claim for class relief."[79]

VTA cites to its purported policy "to pay for all work performed" to support its contention that commonality is not established because Plaintiffs have not shown that common policies or

---

[74] *See* Docket No. 154 at 12-13.

[75] *See Stitt*, 2014 WL 1760623 at *4.

[76] *See* Docket No. 143 at 15-16.

[77] *See Stitt*, 2014 WL 1760623 at *5.

[78] *See Wal-Mart*, 131 S.Ct. at 2551.

[79] *See Ellis*, 657 F.3d at 981 (internal citations omitted).

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

practices will drive resolution of the lawsuit.[80]  In particular, VTA points to its procedure by which employees can submit extra time reports when they work longer than the hours that are usually allocated to their shifts.[81] The regular submission of these records and routine payment for the additional time claimed, VTA contends, shows VTA is not aware that operators work additional time without submitting extra time records.[82]  VTA also asserts that its receipt of less than one extra pay request per operator per week shows that there is "no evidence" that unpaid routinely late time occurs regularly.[83]  Further, VTA claims that operators have not been undercompensated because VTA pays all operators for at least eight hours of work on all shifts regardless of the actual length of the shift.[84]

The court finds these claims unavailing.  Nothing about the policies VTA identifies negate the classwide nature of the questions of whether the categories of time Plaintiffs identify are compensable work time and whether the failure of VTA's compensation scheme to separately allocate pay for these categories of time is improper.  To the contrary, as Plaintiffs note, VTA's assertions regarding these policies actually raise additional common questions.  For instance, Plaintiffs contend that VTA has constructive and actual knowledge that routinely late time occurs for which operators do not submit extra time requests.[85]  Plaintiffs further assert even though VTA

---

[80] *See* Docket No. 154 at 10-11; *see also* Docket No. 155, Terrazas Decl. at ¶ 15 ("It is VTA policy that all employees are to be paid for all time worked and that there be no off the clock work unpaid.").

[81] *See* Docket No. 154-1, Geleynse Decl. at ¶¶ 3-6.

[82] *See* Docket No. 154 at 11, 13.  VTA receives about "36,500 extra pay requests annually from a workforce of approximately 975 Bus and Light Rail Operators." *See* Docket No. 154-1, Geleynse Decl. at ¶¶ 3-6. These requests are "rarely denied." *See id.*

[83] *See* Docket No. 154 at 11.

[84] *See id.*; Docket No. 155, Terrazas Decl. at ¶ 11 ("At all times from the year 2008 to present, the Collective Bargaining Agreements between VTA and ATU Local 265 provided for an eight hour daily pay guarantee for all Bus and Light Rail Operators.").

[85] Plaintiffs contend that VTA has knowledge that routinely late time occurs because VTA monitors vehicle locations using GPS devices. *See* Docket No. 143 at 11 (citing Docket No. 145-2,

16

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1   is unaware that this under-compensation occurs, VTA adheres to burdensome policies regarding

2   the extra pay request process which systematically result in operators not submitting such

3   requests.[86]  These practices, Plaintiffs assert, constitute a "policy-to-violate-the-policy" against

4   VTA's stated prohibition against off-the-clock work.[87]  As stated above, Plaintiffs also contend that

5   VTA's policy of a guarantee of eight paid hours per shift should not "offset any time" operators

6   spend performing tasks that are not included in their schedules.[88]  Because the disputed policies

7   apply to all class members, Plaintiffs' allegations about these polices raise the common questions

8   of whether VTA's extra time report practices and guarantee of eight hours per shift actually

9   prevent off-the-clock work.

---

Tidrick Decl., Ex. F, Rosenberg Depo. at 32:5-34:18; Docket No. 145-2, Tidrick Decl., Ex. G, Cuff Depo. at 16:5-16, 29:10-30:19, 32:3-18); *see also* Docket Nos. 145-1, 145-2, Tidrick Decl, Ex. B, Operators' Decls.  Plaintiffs also claim that VTA is aware vehicles are routinely late because it has received reports from operators showing that vehicles are late. *See* Docket No. 143 at 11 (citing Docket No. 145-2, Tidrick Decl., Ex. F, Rosenberg Depo. at 44:1-46:11; Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 13:20-14:18; Docket Nos. 148-6 to 149-4, Tidrick Decl., Exs. M, N).  Further, VTA is aware that operators do not always submit extra time requests when their vehicles are late. *See* Docket No. 145-2, Tidrick Decl., Ex. D, Stanislaw Depo. at Vol. 1 at 61:15-62:1; Docket No. 145-2, Tidrick Decl., Ex. G, Cuff Depo. at 31:8-22; Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 15:3-20.

[86] *See* Docket No. 143 at 11-13.  Plaintiffs note that VTA keeps blank extra pay request forms at divisions instead of in its transit vehicles or operators' pouches. *See id.* at 12 (citing Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 38:19-39:19).  Further, VTA conceded that it might consider it "excessive" if an operator turned in an extra pay request every day. *See* Docket No. 145-2, Tidrick Decl., Ex. H, Chaney Depo. at 34:11-20.  VTA also does not allow operators to call in their unscheduled time by telephone and does not discipline supervisors who know that operators have performed unscheduled work for which they have not submitted an extra pay request. *See id.* at 38:4-9, 54:7-21.  The named plaintiffs and other operators state that VTA's "burdensome and confusing" procedures regarding extra pay requests discourage them from submitting such requests. *See* Docket Nos. 145-1, 145-2, Tidrick Decl., Ex. B, Operators' Decls.

[87] *See* Docket No. 143 at 13 (citing *Mahoney v. Farmers Ins. Exch.*, Case No. 4:09-cv-2327, 2011 WL 4458513, at *9 (S.D. Tex. Sept. 23, 2011) (concluding that defendant's actual practices regarding "off-the-clock work" are evidence of a "policy-to-violate-the-policy")).

[88] *See* Docket No. 167 at 7.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

VTA may ultimately be able to show that Plaintiffs' positions lack merit and that its policies properly compensate the class members.  But the court "is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist" and must not "turn class certification into a mini-trial" by "determin[ing] whether class members could actually prevail on the merits of their claims."[89]  Rather, the court's conclusion that resolution of the questions Plaintiffs raise will "generate common *answers* apt to drive the resolution of the litigation" is sufficient to meet the commonality requirement.[90]

Plaintiffs have shown that VTA has uniform policies and procedures relating to compensation that "did not leave the relevant compensation decisions to the discretion of local supervisors."[91]  Given this uniformity, divergences in the behavior of individual operators or their responses to these policies not establish a lack of commonality.  In particular, the ability of operators to decide not to submit extra time reports for individualized reasons or arrive at the end points of their runs late for reasons that are "unrelated to compensable work time" does not negate the "class-wide nature of the primary question" of whether VTA's policies systematically result in under-compensation.[92]  Likewise, VTA's defense that Plaintiffs engaged only in *de minimis* activities for which they are not entitled to compensation does not preclude class treatment because analysis of this defense requires resolution of a "common issue of law," not an "individualized

---

[89] *See Ellis*, 657 F.3d at 983 n.8.

[90] *See Abdullah*, 731 F.3d at 957 (emphasis in original).

[91] *See Stitt*, 2014 WL 1760623 at *6 (citing *Eddings v. Health Net, Inc.*, Case No. 10-1744-JST(RZx), 2011 WL 4526675, at * 1, (C.D. Cal. July 27, 2011) (finding that defendant subjected the purported class members to the same "timekeeping and rounding policies" and plaintiffs' claim "satisfies *Dukes* and is proper for classwide resolution")).

[92] *See Stitt*, 2014 WL 1760623  at *4; *see also* Docket No. 154-2, Rosenberg Decl. at ¶¶ 3-4 (asserting that the data Plaintiffs possess does not show "the reasons why a bus was late" and that "[b]uses can return late to Divisions for many reasons unrelated to work" such as operators running personal errands or taking extended breaks).

18

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1    inquiry" into each operator's activities.[93]   As a result, Plaintiffs have met the commonality

2    requirement with respect to all categories of compensable time at issue.

3         *Fourth*, Plaintiffs have met the typicality requirement.  Typicality[94] "refers to the nature of

4    the claim or defense of the class representative, and not to the specific facts from which it arose or

5    the relief sought."[95]   While typicality and commonality occasionally merge, typicality derives its

6    independent legal significance from its ability to "screen out class actions in which the legal or

7    factual position of the representatives is markedly different from that of other members of the class

8    even though common issues of law or fact are present."[96]   The test of typicality is "whether other

9    members have the same or similar injury, whether the action is based on conduct which is not

10   unique to the named plaintiffs and whether other class members have been injured by the same

---

[93] *See* Docket No. 154 at 12; *Bibo v. Fed. Express, Inc.*, Case No. C-07-2505-TEH, 2009 WL 1068880, at *13 (N.D. Cal. Apr. 21, 2009) ("[W]hether the amounts of work in question are *de minimis* is a common question of law."); *see also Stitt*, 2014 WL 1760623 at *5-6 (rejecting defendant's claim that the commonality requirement is not met because defendant claimed that "the record evidence shows that [the time for which plaintiffs seek compensation] is *de minimis*").  In the cases to which VTA cites, courts found that *de minimis* defense weighed against class certification in part because plaintiffs presented substantial evidence of uniform policies and procedures that precluded resolution of the *de minimis* defense on a classwide level. *See* Docket No. 154 at 12 (citing cases); *Reed v. County of Orange*, 266 F.R.D. 446, 461-62 (C.D. Cal. 2010) ("Since Plaintiffs have not provided substantial evidence of a single [defendant] policy or practice that violates the FLSA...the Court finds that proving [the *de minimis* defense] will be as individualized as the claims are."); *Hawkins v. Securitas Sec. Services USA, Inc.*, 280 F.R.D. 388, 399-401 (N.D. Ill. 2011) (finding that *de minimis* defense could not be resolved on a classwide basis for some of plaintiffs' claims when "individual security officers in the putative class worked under different circumstances and were managed by different personnel"); *Espinoza v. Cnty of Fresno*, 290 F.R.D. 494, 506-7 (E.D. Cal. 2013) (The "*de minimis* defense [is not] meaningful [when] the various plaintiffs' claims [are] like apples and oranges...By contrast, where there is less variation, the *de minimis* defense is susceptible of classwide resolution, such as by determining how much time is *de minimis* as a matter of law and what characteristics time must have before it can be considered *de minimis.*") (internal citations omitted).  Here, Plaintiffs have shown that their claims are sufficiently uniform that "the *de minimis* defense is susceptible of classwide resolution." *See id.*

[94] *See* Fed. R. Civ. P. 23(a)(3).

[95] *Parsons*, 754 F.3d at 685 (internal citation omitted).

[96] 7A Wright, § 1764.

19

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1  course of conduct."[97]   However, "[u]nder the rule's permissive standards, representative claims are

2  'typical' if they are reasonably co-extensive with those of absent class members; they need not be

3  substantially identical."[98]

4         The named plaintiffs and all members of the proposed class are similar because they all are

5  or were employed as bus or train operators during the proposed class period.[99]   VTA asserts that

6  the typicality requirement is not met in part because the named plaintiffs' claims are so

7  individualized that they even diverge from each other with respect to the categories of time for

8  which they seek compensation.[100]   The court agrees with VTA the named plaintiffs' claims are not

9  "substantially identical" to the other class members' claims.[101]   But these differences do not negate

10  the fact that all proposed class members' claims are grounded on the same VTA policies, practices

11  and procedures.[102]   Further, VTA's contention that it can assert "unique" *de minimis* defenses

12  against some of the representative's claims is unpersuasive because as previously noted, the *de*

13  *minimis* defense can be resolved on a class-wide basis even if the amounts of time for which each

14  _____

[97] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

15  [98] *Parsons*, 754 F.3d at 685 (internal citations omitted).

16
17  [99] *See* Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶ 2, Silveira Decl. at ¶ 2.  VTA's
    complaint that Silveira is an improper representative because he was "never before identified as a
    class representative and is a "late minute substitution" lacks merit because VTA stipulated to the
18  substitution and amendment adding Silveira as a representative. *See* Docket No. 154 at 4; *see also*
19  Docket Nos. 141, 142.

20  [100] *See* Docket No. 154 at 16-17; *see also* Docket No. 145-1, Tidrick Decl., Ex. B, Rosa Decl. at ¶¶
    7, 11, 15 (asserting that Rosa has been compensated straight time for start-end travel time, split-
21  shift travel time and turn-in time); Docket No. 145-1, Tidrick Decl., Ex. B, Silveira Decl. at ¶¶ 7,
22  11, 21 (asserting that Silveira has not been compensated for all straight time or at one-and-a-half
    time with respect to start-end travel time, split-shift travel time and turn-in time).

23
24  [101] *See Parsons*, 754 F.3d at 685.

25  [102] *See Lopez v. G.A.T. Airline Ground Support, Inc.*, Case No. 09-cv-2268-IEG(BGS), 2010 WL
    3633177, at *7 (S.D. Cal. Sept. 13, 2010) ("Notwithstanding these variations in the named
26  Plaintiffs' claims, the Court finds Plaintiffs' claims are sufficiently representative of the proposed
    class members . . . Although not all the named Plaintiffs can assert all of the claims, their claims
27  are collectively typical of the class members as a whole.").

28                                    20

United States District Court
For the Northern District of California

representatives and class member seek compensation differ.[103]   Accordingly, the named plaintiffs meet the typicality requirement because their claims are "reasonably coextensive" with the claims of the other class members.[104]

**Fifth**, Plaintiffs have met the adequacy requirement.  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."[105]  Class representatives and counsel are adequate if they do not have "any conflicts of interest with other class members" and if they will "prosecute the action vigorously on behalf of the class."[106]  The adequacy of class counsel concerns whether proposed counsel is (1) "qualified, experienced and generally able to conduct the litigation" and (2) will "vigorously prosecute the interests of the class."[107]  "These standards are generally met with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary."[108]

VTA contends that the Plaintiffs have not zealously pursued the class members' interests because they choose to seek unpaid straight time and minimum wage claims when they could have sought claims for unpaid overtime.[109]  VTA claims that this decision is contrary to the class members' best interest because the Fair Labor Standards Act does not provide compensation for hours worked beyond eight hours in a day and because class members will lose their rights to seek

---

[103] *See* Docket No. 154 at 16; *see also* Docket No. 145-1, Tidrick Decl., Ex. B, Silveira Decl. at ¶ 19 (turn-in time activities take "up to 5 minutes every work day"), ¶ 30 (routinely late time is between about one and ten minutes); Docket No. 145-1, Tidrick Decl., Rosa Decl. at ¶ 13 (turn-in activities take "up to ten (10) minutes every time").

[104] *See Parsons*, 754 F.3d at 685.

[105] *Hanlon*, 150 F.3d at 1020.

[106] *See* Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020.

[107] *Stitt*, 2014 WL 1760623 at *7 (citing Fed. R. Civ. P. 23(a)(4); 23(g)).

[108] *See id.* (citing Newberg on Class Actions § 3:72 (5th ed.)).

[109] *See* Docket No. 154 at 17.

21

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

overtime compensation for claims that are adjudicated in this action.[110]   However, the existence of alternative strategies does not show that the strategy Plaintiffs selected is inadequate.  Plaintiffs contend they have made "reasonable decisions to pursue statutory minimum wage claims under Wage Order No. 9…and to pursue overtime claims under the FLSA."[111]   Although Plaintiffs may not ultimately prevail on these claims, they have presented sufficient justification for their chosen strategy to establish that it is a method by which they can "prosecute the action vigorously on behalf of the class."[112]   Further, given proposed class counsel's extensive experience with class action litigation and wage and hour actions,[113]   VTA's suggestion that its status as "such a small law firm" would prevent it from being able to adequately represent the class lacks merit.[114]

Likewise, proposed class counsel's engagement in alleged misconduct in relation to the Alameda-Contra Costa Transit District in another lawsuit, while more disconcerting than proposed class counsel's size, also does not establish that proposed class counsel is inadequate.  AC Transit concluded that one attorney for proposed class counsel used his position as a board member at AC Transit to gain access to privileged and confidential information regarding FLSA litigation against AC Transit in order to advance litigation against VTA and Tri-County Metropolitan Transportation District of Oregon.[115]   AC Transit also concluded that this attorney took part in confidential legal briefings about the FLSA litigation against AC Transit without informing its board that he was

---

[110] *See id.*

[111] *See* Docket No. 167 at 14.

[112] *Hanlon*, 150 F.3d at 1020.

[113] *See* Docket No. 145, Tidrick Decl. at ¶¶ 17-18; Docket No. 149-4, Ex. O.

[114] Docket No. 154 at 17.

[115] *See* Docket No. 154-3, Ryan Decl. at ¶¶ 3-8.

22

United States District Court
For the Northern District of California

1    involved in similar cases against VTA and Tri-Met.[116]   Complaints were made to the state bars of

2    California and Oregon and the AC Transit Board of directors "publicly censured" this attorney.[117]

3         Ultimately, the State Bar of California determined that the allegations of misconduct did not

4    "warrant further action" and the Oregon State Bar concluded that there was not probable cause of

5    an ethics violation.[118]   The court does not condone "reward[ing]" misconduct with an appointment

6    as class counsel.[119]   But given the dismissal of both of these actions and proposed class counsels'

7    status as "members of the bar in good standing," the court does not find that this attorney's actions

8    rise to the level sufficient to establish that proposed class counsel are not "qualified and competent

9    to represent a class."[120]

10        **Sixth**, Plaintiffs have shown that common questions of law and fact predominate.  Under

11   Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members

12   predominate over any questions affecting only individual members."  Rule 23(b)(3)'s

13   predominance requirement "tests whether the proposed classes are sufficiently cohesive to warrant

14   adjudication by representation."[121]   "Where common questions present a significant aspect of the

15   case and they can be resolved for all members of the class in a single adjudication, there is clear

16   justification for handling the dispute on a representative rather than on an individual basis."[122]

17        With respect to Plaintiffs' claims for unpaid wages for time spent on non-driving activities,

18   common questions predominate.  Because Plaintiffs have presented substantial evidence that VTA

19

20   [116] *See id.* at ¶ 6.

21   [117] *See id.* at ¶¶ 7-8; Docket No. 168, Tidrick Decl. at ¶ 4.

22   [118] *See id.* at ¶ 4, Exs. A, B.

23   [119] *See* Docket No. 154 at 18.

24   [120] *See Stitt*, 2014 WL 1760623 at *7.

25

26   [121] *Wang*, 737 F.3d at 545 (internal citations omitted).

27   [122] *Hanlon*, 150 F.3d at 1022.

28

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1   has common policies not to separately allocate pay for these time spent on these activities,

2   Plaintiffs' claims for these categories of time raise questions regarding "the legality of [VTA's]

3   payment practices [which] apply to all [o]perators."[123]   Accordingly, although the extent to which

4   these policies affect each operator differs, for all Plaintiffs' claims for the time spent on these

5   activities, "the predominant question is whether [VTA's] policies and practices not to compensate

6   [the class members] for such time" is illegal.[124]

7           Likewise, although each operator's behavior varies, the class is "sufficiently cohesive to

8   warrant adjudication by representation" with respect to Plaintiffs' claims for routinely late time.[125]

9   VTA contends its policies against off-the-clock work insure that unpaid time occurs only as a result

10  of individual operators' decisions not to submit extra time reports and other "individualized

11  factors."[126]   However, as stated above, the policies VTA identifies create common questions

12  regarding the degree to which these policies actually prevent off-the-clock work.  These issues, in

13  addition to questions regarding whether VTA has knowledge that operators work routinely late

14  time without compensation and whether its scheduling policy systematically requires operators to

15  incur routinely late time, are central to the determination of whether the class members are entitled

16  to compensation for routinely late time.[127]   It is true that individual operators may decide not to

17  submit extra time reports for unique reasons.  However, in light of the prevailing nature of the

18  common questions identified above, VTA's assertion that "individual issues essential to liability"

19  predominate is unpersuasive.[128]

---

20

21  [123] *See Stitt*, 2014 WL 1760623 at *8.

22  [124] *See id.*

23  [125] *See Wang*, 737 F.3d at 545.

24  [126] *See* Docket No. 154 at 13.

25  [127] *See Stitt*, 2014 WL 1760623 at *9 (noting the existence of similar common questions with
26  respect to operators' claims for routinely late time).

27  [128] *See* Docket No. 154 at 13.

28

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    Likewise, VTA's claim that, like in cases in which courts "repeatedly" held that "off-the-

2    clock claims for unpaid wages present individualized issues that preclude certifications as a class,"

3    VTA's "policy pays for overtime work and requires that such work be reported" is misguided.[129]

4    The cases to which VTA cites establish the principle that when "the evidence establishes a formal

5    policy prohibiting off-the-clock work, plaintiffs must present substantial evidence of a systematic

6    company policy to pressure or require employees to work off the clock."[130]   But even if the court

7    found that VTA's extra pay report procedure was sufficient to establish a "formal policy" against

8    off-the-clock work, this would not show that individual questions predominate because, as stated

9    above, Plaintiffs have presented "substantial evidence" that VTA follows a "policy-to-violate-the-

10   policy" against off-the-clock work.[131]

11   Plaintiffs have also sufficiently explained how they intend to prove damages for their

12   unpaid wage claims on a class-wide basis.  In *Behrend*, the Supreme Court held that in order to

13   satisfy the predominance inquiry, a plaintiff must present a damage model that (1) identifies

14   damages that stem from the defendant's alleged wrongdoing and (2) establishes that "damages are

15   susceptible of measurement across the entire class."[132]   Damage calculations at the class

16

17   [129] *See* Docket No. 154 at 10-11 (citing cases).

18   [130] *See Brewer v. Gen. Nutrition Corp.*, No. 11–CV–3587-YGR, 2014 WL 5877695, at *11 (N.D.
     Cal. Nov. 12, 2014) (internal citations omitted); *In re Autozone, Inc. Wage and Hour Employment*

19   *Practices Litigation*, 289 F.R.D. 526, 539 (N.D. Cal. 2012) ("Here, …there is a uniform policy
     prohibiting off-the-clock work.  In light of that policy, Plaintiffs must present substantial evidence

20   that AutoZone requires its employees to work off-the-clock."); *Collins v. ITT Educational Services,
     Inc.*, Case No. 12-cv-1395-DMS-BGS, 2013 WL 6925827, at *6 (S.D. Cal., July 30, 2013)

21   (Because "the only uniform policy Plaintiffs have shown is Defendant's written policy requiring
     employees to report all time worked…and prohibiting off-the-clock work…. In light of that policy,

22   Plaintiffs must establish that they were uniformly required to work overtime and not report it.");
     *Ortiz v. CVS Caremark Corp.*, C–12–05859 EDL, 2013 WL 6236743, at *9 (N.D. Cal. Dec. 2,

23   2013) (employer had policy against off-the-clock work and there was "no evidence" of a policy
     requiring off-the-clock work).

24

25

26   [131] *See Brewer*, 2014 WL 5877695 at *11.

27   [132] *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).

28

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

certification stage are not required to be "exact," but the court's analysis of the proposed damage calculation model must be "rigorous."[133]  However, the Ninth Circuit recognizes "the presence of individualized damages cannot, by itself, defeat class certification" and holds that *Behrend* requires plaintiffs "to show that their damages stemmed from the defendant's actions that created the legal liability."[134]

To prove that damages could be calculated on a class-wide basis, Plaintiffs offered the opinion of Richard Drogin, who asserted he could determine damages amounts for the unpaid wages that the class members are allegedly owed based on the data Plaintiffs provided to him.[135] Drogin states that to calculate damages for unpaid time (1) "[a]n exact calculation for everyone in the class can be made based on available data" or (2) "a random sample can be drawn, and damages calculations for the sample can be projected to the class as whole, using appropriate statistical formulas."[136]

VTA claims that Plaintiff cannot meet the predominance requirement because Plaintiffs have not shown that "damages are capable of measurement on a classwide basis."[137]  In particular, VTA asserts that Drogin's first proposed method does not show damages are susceptible to common proof because he identifies sources of data without showing how he proposes to use those sources to perform an "exact calculation."[138]  But while Drogin could have provided more insight into his proposed application of his first method to the available data, this lack of detail does not

---

[133] *See id.*

[134] *Leyva*, 716 F.3d. at 514.

[135] *See* Docket No. 150, Drogin Decl. at ¶¶ 4-6.

[136] *See id.* at ¶ 22.

[137] *See* Docket No. 154 at 15 (citing *Behrend*, 133 S.Ct. at 1433).

[138] *See* Docket No. 154 at 14.

26

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

show that Plaintiffs have fallen short of *Behrend* because at this stage of the litigation damage

calculations need not be "exact."[139]

Likewise, VTA's allegation that Drogin's first method does not "measure up to the *Daubert*

standard of reliability" is unavailing.[140]  In *Wal-Mart*, the Supreme Court stated that it "doubt[ed]"

the "proposition that *Daubert* simply did not apply" at the class certification stage but did not

provide guidance about the "extent and rigor of the appropriate *Daubert* analysis."[141]  However,

when considering expert testimony in relation to the predominance requirement, the central

question is whether Plaintiffs have met their burden to show that damages can be calculated on a

classwide basis.  Accordingly, the relevant inquiry is a "tailored *Daubert* analysis which

'scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and

the current state of the evidence.'"[142]

Here, Drogin proposes to calculate damages using standard methodology premised on data

common to all class members.[143]  Further, given that the data Drogin proposes to use is from

VTA's own records,[144] VTA's assertion that Drogin's opinion falls short of *Daubert* because

"there is no evidence" that data upon which the calculation would rely "is itself reliable" lacks

merit.[145]  As a result, Plaintiffs have met their burden under *Behrend* because Drogin's proposed

---

[139] *See Behrend*, 133 S.Ct. at 1433.

[140] *See* Docket No. 154 at 14.

[141] *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 490 (C.D. Cal. 2012) (citing *Wal-Mart*, 133 S.Ct. at 2553-54).

[142] *See id.* at 495; (citing *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011)); *see also Sirko v. IBM Corp.*, Case No. CV-13-03192-DMG, 2014 WL 4452699, at *6 (C.D. Cal. Sept. 3, 2014) ("At the class certification stage, courts should apply a 'tailored' *Daubert* analysis to determine the reliability of the expert's testimony regarding the Rule 23 requirements, not the merits of the case.") (internal citations omitted).

[143] *See* Docket No. 150, Drogin Decl. at ¶¶ 4-19.

[144] *See id.* at ¶ 4.

[145] *See* Docket No. 154 at 14.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

1  method is sufficiently reliable to establish that damages are "susceptible of measurement across the

2  entire class."[146]

3       VTA's attempt to invalidate Drogin's second proposed method of using random sampling

4  to extrapolate damages is also unavailing.  VTA complains that Drogin's opinion does not apply

5  the facts of the case to the "theoretical possibility" of extrapolating damages based on sampling.[147]

6  However, Drogin, while not providing exacting detail, shows that he could calculate class-wide

7  damages by creating a "random sample of class members" and requiring people in the sample to be

8  deposed or questioned at trial so that that trier of fact could make "findings that would be the 'data'

9  used by the statistician to calculate unpaid time."[148]  In a similar vein, VTA complains that Drogin

10  does not explain how sampling will take the variations in individual operators' claims into

11  account.[149]  However, the existence of such variations is not a sufficient reason to defeat class

12  certification analysis when "damages will be calculated," as Drogin proposes to do here, "based on

13  the wages each employee lost due to [the VTA's allegedly] unlawful practices."[150]

14       **Seventh**, a class action is superior to other methods for adjudication.  When seeking to

15  certify a class under Rule 23(b)(3), plaintiffs must show that a class action is "superior to other

---

16

17  [146] *Behrend*, 133 S.Ct. at 1433.

18  [147] *See* Docket No. 154 at 15.

19  [148] *See* Docket No. 150, Drogin Decl. at ¶¶ 32-33. VTA's assertion that Drogin's opinion is
20  defective because he did not describe the necessary sample size or anticipated margin of error is
     incorrect. *See* Docket No. 154 at 14.  Drogin may make that assessment after the parties have
21  stipulated to or the court has ruled on what margin of error is acceptable. *See* Docket No. 150 at ¶
     29 ("The choice of a required margin of error estimate is an issue that should either be agreed upon
22  by the parties, or set by the court.").

23  [149] *See* Docket No. 154 at 14-15.

24  [150] *See Tokoshima v. Pep Boys - Manny Moe & Jack of California*, Case No. C-12-4810-CRB,
25  2014 WL 1677979, at *8 (N.D. Cal. Apr. 28, 2014) (citing *In re: High–Tech Employee Antitrust
     Litig.*, 985 F.Supp.2d 1167, 1185 (N.D. Cal. 2013)); *see also Dow Chem. Co. v. Seegott Holdings,*
26  *Inc.*, 768 F.3d 1245, 1257, 1269 (10th Cir. 2014) (noting that "*Wal-Mart* does not prohibit
     certification based on the use of extrapolation to calculate damages" and that a defendant "has no
27  interest in the method of distributing the aggregate damages award among the class members").

28

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

available methods for fairly and efficiently adjudicating the controversy." To determine if a class action is superior, courts consider the following non-exhaustive factors: (1) "class members' interest in individually controlling the prosecution or defense of separate actions"; (2) the extent and nature of any litigation concerning the controversy already begun by or against the class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties likely in managing a class action."[151]

The first factor weighs in favor of certification. A class action is a superior method of adjudication when few class members would have "any meaningful redress against [the defendant]" because "few potential class members could afford to undertake individual litigation against [VTA] to recover the relatively modest damages at issue."[152] The damages at issue here are too modest for individual lawsuits to be practical because each operator would recover a small amount of money and pursuit of the individual operators' claims would require extensive examination of VTA's policies, practices and procedures.

The second factor also weighs in favor of certification. Plaintiffs' counsel asserts that it is unaware of any individually filed actions alleging the same claims that Plaintiffs assert here, and VTA makes no representation that such actions exist.[153] The absence of such individual suits is another indication that "each class member's potential damages recovery does not 'provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"[154]

As to the third factor, the court finds that concentration the litigation in this court is desirable. The class members' claims all stem from VTA's allegedly improper policies, practices, and procedures. It would be both "redundant" and a "wildly inefficient use of limited judicial

---

[151] Fed. R. Civ. P. 23(b)(3)(A)-(D).

[152] *Chamberlan v. Ford Motor Co.*, 223 F.R.D.524, 527 (N.D. Cal. 2004).

[153] *See* Docket No. 143 at 24.

[154] *See Stitt*, 2014 WL 1760623 at *10 (internal citation omitted).

29

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

resources" for each operator to file an individual lawsuit alleging claims for their unpaid wages.[155]
As Plaintiffs note, such individual lawsuits would result in "several hundred trials re-
litigating…the same legal questions" about VTA's conduct.[156]   Further, the modest amounts at
stake in each of these lawsuits makes it unlikely that the individual operators could afford to pursue
their claims.  And even if such individual lawsuits were economically feasible, the chance these
individual suits would convince VTA to reform its conduct is "infinitesimal."[157]   Accordingly, the
third factor weighs in favor of certification.

The fourth factor weighs in favor of certification because adjudication of this case as a class
action will not present unmanageable difficulties.  VTA's contention that class treatment of
Plaintiffs' claims is "impossible" because "separate and controlling inquiries" regarding each
operator's claims predominate fails.[158]   In support of this claim, VTA essentially repeats its prior
assertion that the common questions of law and fact do not predominate because "there is no
employer wide policy covering the purported claims" and each operators' claim for "each day must
be individually tested for factual support and legal significance."[159]   The court has already
concluded that individualized inquiries about each operator's conduct do not predominate over
common questions.  Given that common questions predominate and the class is easily
ascertainable, "certification will not generate any complexities from a case management
perspective."[160]   Because all the factors weigh in favor of certification, a class action is superior to
other methods for adjudicating this lawsuit.

---

[155] *See id.* at *10.

[156] *See* Docket No. 143 at 24-25.

[157] *See Stitt*, 2014 WL 1760623 at *10.

[158] *See* Docket No. 154 at 18.

[159] *See id.*

[160] *See Stitt*, 2014 WL 1760623 at *10.

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

## IV.

2   The court GRANTS Plaintiffs' motion for class certification under Rule 23(b)(3) and

3   appoints named Plaintiffs as class representatives.  The court also designates as class counsel under

4   Rule 23(g) The Tidrick Law Firm and grants class counsel authorization to send to all class

5   members the notice attached to the Declaration of Steven G. Tidrick.[161]  The class is defined as

6   follows: "All individuals who are currently employed, or formerly have been employed, by the

7   Santa Clara Valley Transportation Authority as a bus or train operator at any time on or after

8   August 17, 2009, excluding anyone employed by counsel for Plaintiffs in this action, and any judge

9   to whom this action is assigned and his or her immediate family members."

10   **SO ORDERED.**

11   Dated: February 24, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[161] *See* Docket No. 145-1, Tidrick Decl., Ex. A.

31

Case No.: 5:12-cv-04344-PSG
ORDER GRANTING MOTION FOR CLASS CERTIFICATION